**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **LAURA WOLFE and JOHN WOLFE,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 06-1217-MLB |
| ) | |
| **FORD MOTOR COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on Ford's motion for sanctions (Doc. 49) and plaintiffs' motion to compel and for sanctions. (Doc. 52). For the reasons set forth below, both motions shall be DENIED.

**Background**

This is a product liability case concerning a 1993 Ford Ranger truck. Highly summarized, Laura Wolfe alleges that she was severely and permanently injured when the truck she was driving "rolled over" on a Kansas highway because of "black ice." She contends the truck was negligently designed/manufactured because: (1) 2003 Ford Ranger trucks have a propensity to roll over and (2) the roof structure and restraint system failed to protect her from multiple fractures and lacerations. Her husband, John Wolfe, seeks damages

for loss of consortium.

A status conference was conducted on January 19, 2007 at plaintiffs' request to address the scheduling of a Rule 30(b)(6) deposition. The court ordered plaintiffs to (1) serve Ford with a formal Rule 30(b)(6) deposition notice and (2) conduct the deposition on March 22, 2007. (Doc. 34).[1] Following the conference, plaintiffs emailed an unsigned and undated "Notice of Oral and Videotaped 30(B)(6) Deposition" to Ford requesting the depositions of employees designated by Ford to speak on the following issues:

> 1. Ford's use of composite material to reinforce A and B pillars on any vehicle world-wide between 1990 and the present date.
>
> 2. Ford's research into the use and effectiveness of composite material to reinforce A and B pillars on vehicles both domestically and internationally between 1990 and the present date.
>
> 3. Ford's use of seat belts equipped with special locking devices or features that minimize webbing payout in extreme circumstances between 1990 and the present date.
>
> 4. The background research materials and the results of the research work that supported publication of SAE 820494, which was authored by BE Lampinen and RA Jeryan.

The notice also included a subpoena duces tecum for:

> 1. A current curriculum vitae for each designee.
>
> 2. An authentic copy of any materials reviewed or relied upon by each designee to obtain knowledge of a topic or to refresh recollection on the topic chosen.

---

[1] Plaintiffs were ordered to serve a formal deposition notice listing the topics to be addressed as required by Rule 30(b)(6). Plaintiffs are represented by experienced counsel and their reluctance to follow the federal rules of discovery has been puzzling.

Ford moved to quash certain aspects of the deposition notice and plaintiffs countered by moving for the following relief:

> 1. Denial of Ford's motion to quash;
>
> 2. An order compelling immediate production of all items set forth in the initial disclosure provided to Ford in November 2006;
>
> 3. An order compelling the immediate production of the corporate representative depositions requested in November 2006;
>
> 4. An award of fees and costs associated with the discovery abuse that has occurred; and
>
> 5. Sanctions that are deemed appropriate and necessary to ensure that Ford's conduct is both punished and sufficient to serve as a deterrent to further misconduct in this or other litigation.

Ford's motion to quash and plaintiffs' motion to compel the Rule 30(b)(6) depositions were granted in part and denied in part. Memorandum and Order, (Doc. 42). Plaintiffs' requests (1) to compel documents listed in *their* November 2006 "disclosures" and (2) for sanctions were denied. (Doc. 42, pp. 4, 5, & 8). Additional facts and allegations are included in the following discussion of the parties' more recent discovery motions.

### Ford's Motion for Sanctions

Although not required by Fed. R. Civ. P. 30(b)(6), Ford produced, with one exception, documents requested in the deposition notice approximately one week before the scheduled March 22 deposition. The exception concerned "foam-related materials" which Ford viewed as "commercially-sensitive business information related to current and future Ford products,

-3-

the dissemination of which could cause Ford harm." Ford offered to make the foam-related materials available in advance of the deposition if plaintiffs agreed to a non-sharing protective order.[2] Plaintiffs objected to Ford's request and the parties brought the dispute to the court's attention via email messages. In an effort to salvage the March 22 date, the court addressed the dispute on an expedited basis and issued an order approving Ford's "non-sharing" protective order on March 19, 2007. (Doc. 46, 47).

Following entry of the protective order, Ford shipped the foam-related documents to plaintiffs' counsel and shipping records indicate that a receptionist for plaintiffs' counsel received the documents on March 20 at 10:05 a.m. On the morning of March 21 plaintiffs' counsel advised Ford that the March 22 deposition would not proceed because (1) all responsive documents had not been received, (2) the ruling on the non-sharing protective order would likely be appealed, and (3) the plan to combine this deposition with the deposition for an unrelated Mississippi case was no longer "workable." Unfortunately, defense counsel had already traveled to Detroit on March 20 for the scheduled deposition and incurred unnecessary travel expenses.

Ford moves for sanctions under Fed. R. Civ. P. 37(b)(2) for failure "to obey an order to provide or permit discovery." Specifically, Ford argues that on January 22 the court ordered that the Rule 30(b)(6) deposition would take place on March 22, 2007 and that plaintiffs "unreasonably and unilaterally cancelled the deposition after Ford incurred costs

---

[2] The "non-sharing" provision allowed plaintiffs to review the information but prohibited distribution to "individuals or entities unrelated to this case."

-4-

associated with it."

Plaintiffs oppose Ford's motion, arguing that plaintiffs "made every effort to work with Ford to complete discovery in a timely fashion" and that Ford has engaged in abusive discovery practices. In support of their argument, plaintiffs provide a chronology of their communications with Ford beginning with the October 10, 2006 scheduling conference and ending with plaintiffs' March 21 email canceling the deposition.[3] Plaintiffs also describe communications concerning Thornton v. Ford Motor Company, an unrelated Mississippi case that the parties were attempting to coordinate with the March 22 deposition in this case.

Plaintiffs' assertion that Ford engaged in abusive discovery practices from October 10, 2006 to March 21, 2007 is without merit and summarily rejected. The problems in scheduling the Rule 30(b)(6) deposition were primarily created by plaintiffs' refusal to follow the federal rules for noticing such a deposition.[4] Similarly, plaintiffs failed to follow Fed. R. Civ. P. 34 for the production of documents.[5] Plaintiffs' attempt to justify their cancellation of the March 22 deposition by painting Ford as a "bad actor" is rejected.

---

[3] The chronology is a recitation of "plaintiffs said/defendant said." A regurgitation of the chronology would serve no useful purpose.

[4] Specifically, plaintiffs objected to Ford's insistence that plaintiffs "describe with reasonable particularity the matters on which examination is requested" as required by Rule 30(b)(6).

[5] Rather than serve a formal request for the production of documents under Rule 34, plaintiffs served a subpoena duces tecum with their Rule 30(b)(6) deposition notice. Although Ford produced the majority of the documents a week in advance of the March 22 deposition date, it was under no duty to do so.

However, the court is not persuaded that the imposition of sanctions is warranted at this time. Apparently, the parties agreed to coordinate the March 22 deposition date in this case with a similar deposition arising out of the Thornton case.[6] However, document production issues in the Thornton case resulted in a ruling by the state judge that the deposition in that case would be rescheduled for June 2007. Rulings in the Thornton case raised some uncertainty as to whether, as a practical matter, the deposition should proceed in this case. Accordingly, Ford's request for monetary sanctions shall be DENIED.[7]

### Plaintiffs' Motion to Compel and for Sanctions

Plaintiffs' motion is a "cut-and-paste" rehash of arguments previously ruled on by the court. Accordingly, the motion to compel and for sanctions shall be DENIED.

**IT IS THEREFORE ORDERED** that Ford's motion for sanctions **(Doc. 49)** and plaintiffs' motion to compel and for sanctions **(Doc. 52)** are **DENIED.**

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged.

---

[6] The Mississippi case is unrelated to the accident in this case and involves a Ford Explorer. However, there is some similarity in the discovery requests for information concerning rollover accidents and research concerning vehicle structural integrity.

[7] Counsel for both parties are frequent adversaries. Plaintiffs' counsel indicates that he may have brought as many as a hundred cases against Ford. Although the court declines to award sanctions at this time, the parties are admonished to communicate in good faith during normal business hours in a professional manner. The court reserves the right to revisit plaintiffs' cancellation of the March 22 deposition when considering future discovery issues and requests for sanctions.

The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 28th day of June 2007.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge